

IN THE
TENTH COURT OF APPEALS

No. 10-14-00161-CR

CLIFFORD WAYNE GREEN,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 19th District Court
McLennan County, Texas
Trial Court No. 2012-1908-C1

MEMORANDUM OPINION

Clifford Wayne Green was indicted on two counts of aggravated sexual assault of a child. The jury returned a verdict of not guilty as to Count 1 and a verdict of guilty as to Count 2. The jury assessed punishment at 35 years confinement and a $10,000 fine. We reverse and remand.

**Background Facts**

M.J. testified that she lived with her mother and Appellant, her mother's boyfriend. In February 2000 when M.J. was in the seventh grade, they moved to Lorena,

Texas. M.J. testified that when she was in eighth grade she failed a test at school, and she asked Appellant to sign the test for her because she did not want to get in trouble with her mother. Appellant told her he would sign the test, but she had to do "exercises" for him. M.J. testified that Appellant laid down on his back and told her to pull down her underwear. Appellant then told M.J. to sit on his face, and he touched her private parts with his tongue. M.J. said that she felt pain and that she thought Appellant used his penis, but she could not say for certain that he used his penis.

M.J. testified that Appellant told her not to tell anyone or he would hurt her mother and blame her uncle who was recently released from prison. M.J. stated that Appellant told her he was on parole for murder. Appellant moved out of the house several weeks later.

In 2012, when M.J. was a senior in college, she told her pastor what happened with Appellant, and the pastor encouraged M.J. to tell her mother. M.J. told her mother a few weeks later, and they later reported the incident to the sheriff's department.

### Ineffective Assistance

In the second issue, Appellant argues that he "received ineffective assistance of counsel because he was denied conflict-free representation because Appellant's consulting expert testified as a witness for the State to Appellant's detriment." Although Appellant did not raise this issue in the proceedings concerning his request for a new trial, he may raise this point for the first time on appeal. *See Robinson v. State*, 16 S.W.3d 808, 809-11 (Tex. Crim. App. 2000) (stating that a defendant does not waive an ineffective assistance claim by failing to raise it first at trial or in a motion for new trial).

To prevail on a claim of ineffective assistance of counsel, appellant must satisfy the two-prong test by a preponderance of the evidence showing that: (1) his attorney's performance was deficient; and (2) his attorney's deficient performance deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Id.* at 687, 104 S.Ct. 2052. In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

The State called Dr. William Lee Carter to testify at trial. The State noted that Dr. Carter had not counseled M.J. in this case, but the State had asked Dr. Carter to look at their case and help figure out the issues where the jury would need assistance. The State asked Dr. Carter if he had evaluated Appellant, and Dr. Carter responded that he had not. Dr. Carter testified about the relationship between the accuser and the person being accused. Dr. Carter explained how the relationship between the accuser and the person accused may cause the child not to tell anyone about the abuse.

The State questioned Dr. Carter about Appellant's relationship with M.J. and how the relationship might have affected M.J.'s decision not to disclose the offense. Dr. Carter testified that 50 to 70 percent of child victims do not report sexual abuse and "carry their secret well on into adulthood." The State asked Dr. Carter if he would be surprised that

a member of the jury panel indicated she had been a victim of sexual abuse and had never reported it, and Dr. Carter responded that he would not be surprised by that.

The State further questioned Dr. Carter:

> Now in your opinion then, what kind of implication could it have on a child - - to believe that their offender is a murderer, that he's murdered multiple people, that he's on parole, you know, has seen him argue with her mother, and there is no consequences to that? How can we expect that to - - play on her willingness to disclose the abuse?

Dr. Carter responded that he has evaluated and counseled hundreds of child abuse victims and fear is the underlying reason why children do not disclose the abuse. If a child has reason to believe the person could follow through on a threat, that would give reason to the child to believe her fears are real and she could be hurt or someone she cares about could be hurt if she makes a disclosure.

After Dr. Carter had testified for approximately 30 minutes, the Appellant's trial counsel objected to Dr. Carter's testimony. There was a discussion out of the presence of the jury, and Appellant's trial counsel revealed for the first time that Dr. Carter had evaluated Appellant as a consulting defense expert. The State informed the trial court that it had given Appellant's trial counsel notice of its intention to call Dr. Carter at trial. Appellant's trial counsel responded that he assumed Dr. Carter would inform the State Appellant had retained him in this case. The trial court noted that Dr. Carter had spent 30 minutes testifying for the State "when all this time you knew that he had examined your client, and I certainly didn't know it. The State didn't know it, so … I'm really on the horns of a dilemma here." Appellant's trial counsel stated that he did not say

anything when the State called Dr. Carter because he was not sure for what purpose they were calling him.

Dr. Carter stated outside the presence of the jury that he had forgotten that he did an evaluation of Appellant and that he is not relying on that evaluation in his testimony. The trial court asked Dr. Carter whether he recalled anything about the evaluation that would affect his testimony. Dr. Carter responded that he did not.

The trial court stated:

> Here's what we're going to do. Since the proverbial cat is already out of the bag, I'm not going to try and put it back in. I'm going to let Dr. Carter go ahead and testify as he would in any of the many cases he's testified to in this courtroom and in this courthouse. Dr. Carter if there's any question you're asked by the State or, I guess, by anybody that triggers something in your mind that you've got an ethical conflict or that you're violating any privileged information between you and the Defense, you say "I think I need to talk to you Judge, outside the presence of the jury.'

> …

> Well, this is a fine mess. All right. We're going to continue as though nothing had happened. I wouldn't know how to - - any problem we've got, I wouldn't know how to cure it now, anyway. Anybody have any other suggestions? All right. Hearing none, we're going to take a break. I've got a headache.

Appellant's trial counsel requested a mistrial. The trial court denied the mistrial and stated:

> Had you made the Court aware of any possible conflict at the - - when Dr. Carter came in and testified, I might have to consider that a little more strongly, but at this point, as I said, I don't know how to put the cat back in the bag except to instruct everybody, and I - - as I think I already have, that if Dr. Carter feels like he's been asked a question that - - that in any way triggers his memory of anything the Defendant told him that he'll call that to the attention of the Court, and we'll get outside the presence of the jury

and discuss it. I don't think I can penalize the State for anything because they - - they had no idea about the situation any more than I did.

Dr. Carter continued his testimony. He testified about other reasons a child victim might not report abuse. Dr. Carter testified why a child might tell a peer about the abuse first, as M.J. did in this case and also about the significance of telling a pastor as M.J. did in this case. Dr. Carter agreed with the State that in telling her pastor, M.J. did not seem to have an agenda or a motive. The State also questioned Dr. Carter on the reliability of M.J.'s statement.

Dr. Carter discussed the characteristics of sex offenders and things he notices in evaluating sex offenders. The State questioned Dr. Carter about what he observed when watching the videotaped interview Appellant gave at the sheriff's department and asked Dr. Carter to evaluate Appellant's statements and criminal history. Dr. Carter further testified about the percentage of false allegations of sexual abuse and that M.J. had no motive or agenda to make a false allegation. Dr. Carter agreed with the State that this case falls into the percentage of cases that are unlikely to be false allegations.

In his issue on appeal, Appellant states that he received ineffective assistance of counsel. He points out that he was denied conflict-free representation. Appellant does not complain that his attorney-client privilege was violated by Dr. Carter's testimony at trial, but rather that his right to conflict-free representation must necessarily extend to trial counsel experts such as Dr. Carter. Appellant's argument focuses primarily on his right to conflict-free representation as set out in *Cuyler v. Sullivan*, 446 U.S. 335 (1980) and

that the right to conflict-free representation must include all of an accused's defense team, including a consulting expert.

The Texas Rules of Appellate Procedure provide that the statement of an issue or point will be treated as covering every subsidiary question that is fairly included. TEX. R. APP. P. 38.1 (f). Appellant's issue specifically states that he received ineffective assistance of counsel. His argument notes that the Sixth Amendment of the United States Constitution guarantees his right to reasonably effective assistance of counsel. He further argues in his brief that his trial counsel failed to object to Dr. Carter's testimony until Dr. Carter had testified for 30 minutes. Appellant's issue and argument necessarily include consideration of trial counsel's performance in allowing a retained defense expert to testify on behalf of the State. We will, therefore, consider appellant's argument on appeal that he received ineffective assistance of counsel[1].

In *Andrews v. State*, the Court of Criminal Appeals stated:

> We have said that we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. The policy behind this course is that '[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.' This standard balances the protection of these important policy interests with the protection of each defendant's fundamental Sixth Amendment rights.
> As a result, we have said that the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance and that the better course is to pursue the claim in habeas proceedings. But, when no reasonable trial strategy

---

[1] We need not reach the broader issue argued by counsel that experts are necessarily included to the same extent as attorneys in having conflict-free counsel under the Sixth Amendment.

could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did.

*Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Trial counsel retained Dr. Carter as a consulting expert for Appellant and paid Dr. Carter $850 for his services. Trial counsel received notice that the State intended to call Dr. Carter as a witness. Trial counsel did not bring the conflict to the attention of the State or the trial court prior to Dr. Carter's testimony. Dr. Carter testified for approximately 30 minutes on behalf of the State before trial counsel objected to his testimony. Because the credibility of M.J. was an issue in the case and the delayed outcry was an issue, Dr. Carter's testimony was detrimental to Appellant.

Under the extremely unusual circumstances of this case, the record contains all the information we need to make a decision. *Andrews v. State*, 159 S.W.3d at 103. We find that no reasonable trial strategy could justify counsel's conduct in allowing the retained defense expert to testify favorably for the State. We further find that counsel's performance falls below an objective standard of reasonableness.

Having determined that counsel's performance at trial was deficient, we consider whether there is a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694; *Andrews v. State*, 159 S.W.3d at 101. To satisfy the second prong of the *Strickland* test, we do not require that the appellant show that there would have been a different result if counsel's performance had not been deficient. *Andrews v. State*, 159 S.W.3d at 102. The appellant must show only that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

M.J. did not report the sexual abuse for approximately eleven years. The delayed outcry was an issue at trial. Dr. Carter's testimony helped aid the jury in explaining why M.J. may have delayed making an outcry. The State emphasized the reasons for delayed outcry during final arguments and noted that three members of the panel had been the victims of sexual abuse and one of those had not reported the abuse. Dr. Carter's testimony also helped bolster M.J's credibility and aided the State in proving its case. The State emphasized M.J.'s credibility and the fact that she had no reason to make a false allegation. The main issues at trial were M.J.'s credibility and the delayed outcry. Dr. Carter's testimony aided the State and was detrimental to Appellant concerning those issues. We find that Appellant was prejudiced by the deficiency in trial counsel's performance. We sustain Appellant's second issue on appeal. Because of our disposition of the second issue, we need not address the first issue. TEX.R.APP.P. 47.1.

### Conclusion

We reverse the judgment of the trial court and remand to the trial court for proceedings consistent with this opinion.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Reverse and Remand
Opinion delivered and filed December 23, 2015
Do not publish
 [CR PM]

